

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | §<br>§<br>§<br>§<br>§ | MDL Docket No.<br><br>3:11-MD-2244-K |
| ------------------------------------------------- | § | |
| This Relates To:<br> *Aoki* – 3:13-cv-1071<br> *Christopher* – 3:14-cv-1994<br> *Greer* – 3:12-cv-1672<br> *Klusmann* – 3:11-cv-2800<br> *Peterson* – 3:11-cv-1941 | §<br>§<br>§<br>§<br>§<br>§ | |
| ------------------------------------------------- | § | |

<u>COURT'S CHARGE TO THE JURY</u>

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence. After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an

opportunity to call witnesses and present evidence.  After each party's main case is completed, the opposing party will be permitted to present rebuttal evidence.  After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law.  You will then retire to deliberate on a verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.  If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.   If you do not take notes, rely on your own independent memory of the testimony.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.  Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  However, if you have a specific disagreement as to a particular witness's testimony on a specific subject, we can attempt to obtain that information for you.  On the other hand, any exhibits admitted during the trial will be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  I know that many of you use cell phones, iPhones, Blackberries, the internet and other tools of technology. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, MySpace, LinkedIn, and YouTube.  If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the court immediately.  Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these

matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of the trial.

The evidence in this case will consist of the following:

1.  The sworn testimony of all witnesses, no matter who called a witness.

2.  All exhibits received in evidence, regardless of who may have produced the exhibits.

3.  All facts that may have been stipulated or judicially noticed that you must take as true for purposes of this case.

A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved.

I may take "judicial notice" of certain facts or events.  When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.  If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

During the trial, the lawyers may make objections to questions asked or answers given.  That simply means that the lawyer is requesting that I make a decision on a particular rule of law.  Do not draw any conclusion from such objections or from my rulings on the objections.  These relate only to the legal questions that I must determine and should not influence your thinking.  If I sustain an objection to a question, the

witness cannot answer it.  Do not attempt to guess what answer might have been given had I allowed the question to be answered.  If I overrule an objection, treat the answer like any other.  Additionally, some evidence may be admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose only, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  From the facts that you believe have been proved, you may draw such reasonable inferences or conclusions as you feel are justified in light of your experience.

It is now time for opening statements.

## POST-EVIDENCE INSTRUCTIONS

Now that you have heard all the evidence in this case, I will instruct you on the law that you must apply.

## GENERAL INSTRUCTIONS

It is your duty to follow the law as I give it to you in this Charge. On the other hand, you the jury are the judges of the facts. Do not consider any statements that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Remember that any statement or arguments made by the lawyers are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous. Unless you are instructed otherwise, the plaintiffs must prove each essential part of their claims by a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. In other words, to establish a claim or defense by a "preponderance of the evidence" means to prove that the claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the

proof fails to establish any essential part of the plaintiffs' claims by a preponderance of the evidence, you should find for the defendants as to that claim. The fact of an injury, alone, is not sufficient to prove plaintiffs' claims, including the presence of a defect or causation.

You are the sole judges of the "credibility" or believability of each witness and the weight to be given to the witness's testimony. In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or an innocent lapse of memory; the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. The testimony of a

single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinions on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from the evidence that he testifies regularly as an expert witness and whether his income from such testimony represents a significant portion of his income.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence you may consider in properly finding the truth as to the facts in the case. One is direct evidence. A fact is established by direct evidence when proved by witnesses who saw the act done or heard the words spoken or by

documentary evidence. The other is indirect or circumstantial evidence—the proof of a chain of circumstances indicating the existence or nonexistence of certain other facts. Direct proof of a state of mind is almost never available and is not required. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

There are five separate cases, involving eight plaintiffs. You must give separate consideration to each claim and each party in each case. Although there are eight plaintiffs, it does not follow that if one is successful as to a particular claim, the others should prevail on that claim, too. You must decide each plaintiff's case solely on the evidence that applies to that plaintiff.

A medical device manufacturer, like DePuy Orthopaedics, Inc., owes a duty to adequately warn a patient's orthopedic surgeon about the device's risks. The manufacturer does not owe a duty to warn patients directly.

## Question 1: Strict Liability (Design Defect)

Was there a design defect in the Pinnacle Ultamet Hip Implant at the time it left the possession of DePuy Orthopaedics, Inc. that was a producing cause of the injuries, if any, to the persons listed below?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist there must have been a safer alternative design.

"Safer alternative design" means a product design other than the one actually used that in reasonable probability—

1. would have prevented or significantly reduced the risk of the injury in question without substantially impairing the product's utility, and

2. was economically and technologically feasible at the time the product left the control of DePuy Orthopaedics, Inc. by the application of existing or reasonably achievable scientific knowledge.

"Producing cause" means a cause that was a substantial factor in bringing about the injury, and without which the injury would not have occurred. There may be more than one producing cause.

In answering this question, you are instructed to consider only the condition of the Pinnacle Ultamet Hip Implant, and not the conduct of DePuy Orthopaedics, Inc. The Pinnacle Ultamet Hip Implant may have a design defect even if DePuy Orthopaedics, Inc. exercised all possible care in designing it.

Answer "Yes" or "No" with respect to each of the following:

a. Richard Klusmann   **Y**

b. Jay Christopher   **Y**

c. Donald Greer   **Y**

d. Margaret Aoki   **Y**

e. Pete Peterson   **Y**

## Question 2: Strict Liability (Marketing Defect)

Was there a defect in the warnings at the time the Pinnacle Ultamet Hip Implant left the possession of DePuy Orthopaedics, Inc. that was a producing cause of the injuries, if any, to the persons listed below?

A "defect in the warnings" means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known and which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings means warnings given in a form that could reasonably be expected to catch the attention of a reasonably prudent orthopedic surgeon in the circumstances of the product's use; and the content of the warnings must be comprehensible to the average orthopedic surgeon and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent orthopedic surgeon.

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary orthopedic surgeon with the ordinary knowledge common to the community as to the product's characteristics.

"Producing cause" means a cause that was a substantial factor in bringing about the injury, and without which the injury would not have occurred. There may be more than one producing cause.

Answer "Yes" or "No" with respect to each of the following:

a. Richard Klusmann      Y

b. Jay Christopher       Y

c. Donald Greer          Y

d. Margaret Aoki         Y

e. Pete Peterson         Y

11

Answer Question 3 only if you have answered "yes" to Question 1 <u>or</u> Question 2. Otherwise do not answer Question 3.

### Question 3: Nonmanufacturing Seller - Johnson & Johnson

(i)     Was Johnson & Johnson engaged in the business of selling the Pinnacle Ultamet Hip Implant?

The "business of selling" means involvement, as a part of its business, in selling, leasing, or otherwise placing in the course of commerce products similar to the product in question by transactions that are essentially commercial in character.

Answer "Yes" or "No."

Answer: _____Y_____

(ii)    Did Johnson & Johnson participate in the design of the Pinnacle Ultamet Hip Implant?

Answer "Yes" or "No."

Answer: _____Y_____

(iii)   If, in your answer to Question 1 or Question 2, you found that the Pinnacle Ultamet Hip Implant had a defect that resulted in harm to the persons listed below, did Johnson & Johnson actually know of such defect(s), if any, at the time Johnson & Johnson supplied the Pinnacle Ultamet Hip Implant to the person?

Answer "Yes" or "No" with respect to each of the following:

a.  Richard Klusmann     _____N_____
b.  Jay Christopher       _____N_____
c.  Donald Greer          _____N_____
d.  Margaret Aoki         _____Y_____
e.  Pete Peterson         _____N_____

12

<u>Question 4: Negligent Undertaking</u>

Did Johnson & Johnson negligently undertake a duty to provide services to DePuy Orthopaedics, Inc. that proximately caused the injuries, if any, of the persons listed below?

Johnson & Johnson negligently undertook a duty to provide services if

1.  Johnson & Johnson undertook to perform services that it knew or should have known were necessary for the person's protection,

2.  Johnson & Johnson failed to exercise reasonable care in performing those services, and

3.  Either the persons listed below relied on Johnson & Johnson's performance or Johnson & Johnson's performance increased the person's risk of harm.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom.  There may be more than one proximate cause of an injury.

Answer "Yes" or "No" with respect to each of the following:

a.  Richard Klusmann     _____Y_____

b.  Jay Christopher      _____Y_____

c.  Donald Greer         _____Y_____

d.  Margaret Aoki        _____Y_____

e.  Pete Peterson        _____Y_____

13

Answer Question 5 only if you have answered "yes" to Question 1 or Question 2. Otherwise do not answer Question 5.

### Question 5: Aiding and Abetting by Johnson & Johnson

Did Johnson & Johnson knowingly give substantial assistance or encouragement to the tortious conduct of DePuy Orthopaedics, Inc., if any, related to the Pinnacle Ultamet Hip Implant and, if so, was such assistance or encouragement a substantial factor in causing injury to the persons listed below?

A defendant can be held liable for harm resulting to a person from the tortious conduct of another where the defendant knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other.

To establish that Johnson & Johnson is liable for assisting or encouraging DePuy Orthopaedics, Inc., the plaintiffs must prove:

1. DePuy Orthopaedics, Inc. defectively designed the Pinnacle Ultamet Hip Implant (Question 1), or failed to adequately warn about the risks of its use (Question 2), causing harm to them;

2. Johnson & Johnson had knowledge that DePuy Orthopaedics, Inc. defectively designed the Pinnacle Ultamet Hip Implant (Question 1), or failed to adequately warn about the risks of its use (Question 2);

3. Johnson & Johnson had the intent to assist DePuy Orthopaedics, Inc. in the conduct that caused harm to them;

4. Johnson & Johnson gave assistance or encouragement to DePuy Orthopaedics, Inc.; and

5. Johnson & Johnson's assistance or encouragement was a substantial factor in causing the harm to them.

The following factors are relevant to determining whether Johnson & Johnson substantially assisted DePuy Orthopaedics, Inc.: (1) the nature of the wrongful act; (2) the kind and amount of the assistance; (3) the relation of Johnson & Johnson and DePuy Orthopaedics, Inc.; (4) the presence or absence of Johnson & Johnson at the occurrence of the wrongful act; and (5) Johnson & Johnson's state of mind.

Answer "Yes" or "No" with respect to each of the following:

a.  Richard Klusmann      _____Y_____

b.  Jay Christopher       _____Y_____

c.  Donald Greer          _____Y_____

d.  Margaret Aoki         _____Y_____

e.  Pete Peterson         _____Y_____

Answer Questions 6 and 7 if you answered "yes" to subpart "(a) Richard Klusmann" in Question 1 <u>or</u> Question 2.  Otherwise, do not answer Questions 6 and 7.

<u>Question 6: Personal Injury Damages of Richard Klusmann</u>

What sum of money, if paid now in cash, would fairly and reasonably compensate Richard Klusmann for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.  Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.  Physical pain and mental anguish sustained in the past:
    Answer: ___7,084,022___

2.  Physical pain and mental anguish that, in reasonable probability, Richard Klusmann will sustain in the future:
    Answer: ___11,806,703___

3.  Disfigurement sustained in the past:
    Answer: ___4,722,681___

4.  Disfigurement that, in reasonable probability, Richard Klusmann will sustain in the future:
    Answer: ___4722,681___

5.  Physical impairment sustained in the past:
    Answer: ___7,084,022___

16

6.   Physical impairment that, in reasonable probability, Richard Klusmann
     will sustain in the future:

     Answer: ___11,806,703___

7.   Medical care expenses in the past:

     Answer: ___144,000___

8.   Medical care expenses that, in reasonable probability, Richard Klusmann
     will sustain in the future.

     Answer: ___144,000___

<u>Question 7: Damages of Susan Klusmann for Harm to Richard Klusmann</u>

What sum of money, if paid now in cash, would fairly and reasonably compensate Susan Klusmann for injuries, if any, to her husband, Richard Klusmann, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.   Loss of household services sustained in the past.

"Household services" means the performance of household and domestic duties by a spouse to the marriage.

Answer: __621,405__

2.   Loss of household services that, in reasonable probability, Susan Klusmann will sustain in the future.

Answer: __621,405__

3.   Loss of consortium sustained in the past.

"Consortium" means the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage.

Answer: __621,405__

18

4.   Loss of consortium that, in reasonable probability, Susan Klusmann will sustain in the future.

Answer:   **621, 405**

Answer Questions 8 and 9 if you answered "yes" to subpart "(b) Jay Christopher" in Question 1 or Question 2.  Otherwise, do not answer Questions 8 and 9.

<u>Question 8: Personal Injury Damages of Jay Christopher</u>

What sum of money, if paid now in cash, would fairly and reasonably compensate Jay Christopher for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.  Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.  Physical pain and mental anguish sustained in the past:

Answer: 2,128,893

2.  Physical pain and mental anguish that, in reasonable probability, Jay Christopher will sustain in the future:

Answer: 4,567,417

3.  Disfigurement sustained in the past:

Answer: 0

4.  Disfigurement that, in reasonable probability, Jay Christopher will sustain in the future:

Answer: 0

5.  Physical impairment sustained in the past:

Answer: 2,128,893

6.  Physical impairment that, in reasonable probability, Jay Christopher will

sustain in the future:

Answer: _4,967,417_

7.  Medical care expenses in the past:

Answer: _41,000_

8.  Medical care expenses that, in reasonable probability, Jay Christopher will sustain in the future.

Answer: _20,000_

<u>Question 9: Damages of Jacqueline Christopher for harm to Jay Christopher</u>

What sum of money, if paid now in cash, would fairly and reasonably compensate Jacqueline Christopher for injuries, if any, to her husband, Jay Christopher, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.   Loss of household services sustained in the past.

"Household services" means the performance of household and domestic duties by a spouse to the marriage.

Answer: __186,745__

2.   Loss of household services that, in reasonable probability, Jacqueline Christopher will sustain in the future.

Answer: __186,745__

3.   Loss of consortium sustained in the past.

"Consortium" means the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage.

Answer: __186,745__

22

4.    Loss of consortium that, in reasonable probability, Jacqueline Christopher will sustain in the future.

Answer: ___*186,745*___

Answer Question 10 if you answered "yes" to subpart "(c) Donald Greer" in Question 1 or Question 2.  Otherwise, do not answer Question 10.

### Question 10: Personal Injury Damages of Donald Greer

What sum of money, if paid now in cash, would fairly and reasonably compensate Donald Greer for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.  Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.  Physical pain and mental anguish sustained in the past:

Answer: 3,487,719

2.  Physical pain and mental anguish that, in reasonable probability, Donald Greer will sustain in the future:

Answer: 3,487,719

3.  Disfigurement sustained in the past:

Answer: 0

4.  Disfigurement that, in reasonable probability, Donald Greer will sustain in the future:

Answer: 0

5.  Physical impairment sustained in the past:

Answer: 7,487,719

6.  Physical impairment that, in reasonable probability, Donald Greer will

sustain in the future:

Answer: __7,487,719__

7. Medical care expenses in the past:

Answer: __26,000__

8. Medical care expenses that, in reasonable probability, Donald Greer will sustain in the future.

Answer: __26,000__

Answer Question 11 if you answered "yes" to subpart "(d) Margaret Aoki" in Question 1 or Question 2. Otherwise, do not answer Question 11.

### Question 11: Personal Injury Damages of Margaret Aoki

What sum of money, if paid now in cash, would fairly and reasonably compensate Margaret Aoki for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1. Physical pain and mental anguish sustained in the past:

   Answer: 2,237,471

2. Physical pain and mental anguish that, in reasonable probability, Margaret Aoki will sustain in the future:

   Answer: 5,220,767

3. Disfigurement sustained in the past:

   Answer: ⌀

4. Disfigurement that, in reasonable probability, Margaret Aoki will sustain in the future:

   Answer: ⌀

5. Physical impairment sustained in the past:

   Answer: 2,237,471

6. Physical impairment that, in reasonable probability, Margaret Aoki will

26

sustain in the future:

Answer: __5,220,767__

7. Medical care expenses in the past:

Answer: __41,762.07__

8. Medical care expenses that, in reasonable probability, Margaret Aoki will sustain in the future.

Answer: __41,762.07__

Answer Questions 12 and 13 if you answered "yes" to subpart "(e) Pete Peterson" in Question 1 or Question 2.  Otherwise, do not answer Questions 12 and 13.

<u>Question 12: Personal Injury Damages of Pete Peterson</u>

What sum of money, if paid now in cash, would fairly and reasonably compensate Pete Peterson for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.  Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.   Physical pain and mental anguish sustained in the past:

Answer: 4,552,592

2.   Physical pain and mental anguish that, in reasonable probability, Pete Peterson will sustain in the future:

Answer: 10,622,713

3.   Disfigurement sustained in the past:

Answer: 0

4.   Disfigurement that, in reasonable probability, Pete Peterson will sustain in the future:

Answer: 0

5.   Physical impairment sustained in the past:

Answer: 4,552,592

28

6.   Physical impairment that, in reasonable probability, Pete Peterson will sustain in the future:

Answer: _10,662,713_

7.   Medical care expenses in the past:

Answer: _25,994.80_

8.   Medical care expenses that, in reasonable probability, Pete Peterson will sustain in the future:

Answer: _25,994.80_

<u>Question 13: Damages of Karen Peterson for Harm to Pete Peterson</u>

What sum of money, if paid now in cash, would fairly and reasonably compensate Karen Peterson for injuries, if any, to her husband, Pete Peterson, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

You are instructed that any monetary recovery for the elements of damages listed below is not subject to federal income taxes.

Answer separately, in dollars and cents, for damages, if any.

1.    Loss of household services sustained in the past.

      "Household services" means the performance of household and domestic duties by a spouse to the marriage.

      Answer: _**355,350**_

2.    Loss of household services that, in reasonable probability, Karen Peterson will sustain in the future.

      Answer: _**355,350**_

3.    Loss of consortium sustained in the past.

      "Consortium" means the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage.

      Answer: _**355,350**_

4.   Loss of consortium that, in reasonable probability, Karen Peterson will sustain in the future.

Answer: __*399,350*__

Answer Question 14 only if you answered "yes" to Question 1 <u>or</u> Question 2. Otherwise, do not answer the following question.

<u>Question 14: Exemplary Damages for conduct of DePuy Orthopaedics, Inc.</u>

Do you find by clear and convincing evidence that the harm to the persons listed below resulted from gross negligence or fraud by DePuy Orthopaedics, Inc.?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by DePuy Orthopaedics, Inc.,

1.   which when viewed objectively from the standpoint of DePuy Orthopaedics, Inc. at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2.   of which DePuy Orthopaedics, Inc. has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

"Fraud" occurs when

1.   a party makes a material misrepresentation, and

2.   the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3.   the misrepresentation is made with the intention that it should be acted on by the other party's surgeon, and

4.   the other party's surgeon justifiably relies on the misrepresentation and the other party thereby suffers injury.

"Misrepresentation" means

    (a)   a false statement of fact, or

    (b)   a statement of opinion based on a false statement,  or

    (c)   a statement of opinion that the maker knows to be false, or

    (d)   an expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other party, or his or her surgeon, and to which the other party, or his or her surgeon, did not have equal access.

"Fraud" also occurs when

1.    a party fails to disclose a material fact within the knowledge of that party, and

2.    the party knows that the other party's surgeon is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3.    the party intends to induce the other party's surgeon to take some action by failing to disclose the fact, and

4.    the other party suffers injury as a result of his or her surgeon acting without knowledge of the undisclosed fact.

Answer "Yes" or "No" regarding gross negligence and fraud with respect to each of the following:

| | | Gross Negligence: | Fraud: |
|---|---|---|---|
| a. | Richard Klusmann | Y | Y |
| b. | Jay Christopher | Y | Y |
| c. | Donald Greer | Y | Y |
| d. | Margaret Aoki | Y | Y |
| e. | Pete Peterson | Y | Y |

Answer Question 15 only if you answered "yes" to Question 3 <u>or</u> Question 4 <u>or</u> Question 5.  Otherwise, do not answer Question 15.

<u>Question 15: Exemplary Damages for conduct of Johnson & Johnson</u>

Do you find by clear and convincing evidence that the harm to the persons listed below resulted from gross negligence or fraud by Johnson & Johnson?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by Johnson & Johnson,

1. which when viewed objectively from the standpoint of Johnson & Johnson at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2. of which Johnson & Johnson has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

"Fraud" occurs when

1. a party makes a material misrepresentation, and

2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3. the misrepresentation is made with the intention that it should be acted on by the other party's surgeon, and

4. the other party's surgeon justifiably relies on the misrepresentation and the other party thereby suffers injury.

34

"Misrepresentation" means

    (a)   a false statement of fact, or

    (b)   a statement of opinion based on a false statement, or

    (c)   a statement of opinion that the maker knows to be false, or

    (d)   an expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other party, or his or her surgeon, and to which the other party, or his or her surgeon, did not have equal access.

"Fraud" also occurs when

1.    a party fails to disclose a material fact within the knowledge of that party, and

2.    the party knows that the other party's surgeon is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3.    the party intends to induce the other party's surgeon to take some action by failing to disclose the fact, and

4.    the other party suffers injury as a result of his or her surgeon acting without knowledge of the undisclosed fact.

Answer "Yes" or "No" regarding gross negligence and fraud with respect to each of the following:

| | | Gross Negligence: | Fraud: |
|---|---|---|---|
| a. | Richard Klusmann | Y | Y |
| b. | Jay Christopher | Y | Y |
| c. | Donald Greer | Y | Y |
| d. | Margaret Aoki | Y | Y |
| e. | Pete Peterson | Y | Y |

Answer Question 16 only if you answered "yes" to Question 14.  Otherwise, do not answer Question 16.

### Question 16: Amount of Exemplary Damages – DePuy Orthopaedics, Inc.

What sum of money, if any, should be assessed against DePuy Orthopaedics, Inc. and awarded to the persons listed below as exemplary damages for the conduct found in response to Question 15?

> You must answer this question by clear and convincing evidence.  "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

> "Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes.  Exemplary damages includes punitive damages.

> Factors to consider in awarding exemplary damages, if any, are

> 1.  The nature of the wrong.
> 2.  The character of the conduct involved.
> 3.  The degree of culpability of the wrongdoer.
> 4.  The situation and sensibilities of the parties concerned.
> 5.  The extent to which such conduct offends a public sense of justice and propriety.
> 6.  The net worth of the wrongdoer.

> You must not include damages for harm to others who are not parties to this case.

Answer in dollars and cents, if any, with respect to each of the following:



    a.   Richard Klusmann        40 million
    b.   Jay Christopher         20 million
    c.   Donald Greer            20 million
    d.   Margaret Aoki           20 million
    e.   Pete Peterson           20 million

Answer Question 17 only if you answered "yes" to Question 15.  Otherwise, do not answer Question 17.

<u>Question 17: Amount of Exemplary Damages – Johnson & Johnson</u>

What sum of money, if any, should be assessed against Johnson & Johnson and awarded to the persons listed below as exemplary damages for the conduct found in response to Question 16?

> You must answer this question by clear and convincing evidence.  "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

> "Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes.  Exemplary damages includes punitive damages.

> Factors to consider in awarding exemplary damages, if any, are

> 1. The nature of the wrong.
> 2. The character of the conduct involved.
> 3. The degree of culpability of the wrongdoer.
> 4. The situation and sensibilities of the parties concerned.
> 5. The extent to which such conduct offends a public sense of justice and propriety.
> 6. The net worth of the wrongdoer.

> You must not include damages for harm to others who are not parties to this case.

Answer in dollars and cents, if any, with respect to each of the following:



a. Richard Klusmann    40 Million

b. Jay Christopher    40 Million

c. Donald Greer    40 Million

d. Margaret Aoki    40 Million

e. Pete Peterson    40 Million

Answer Question 18 only if you answered Question 16.   Otherwise, do not answer Question 18.

### Question 18: Commercial Bribery

Do you find beyond a reasonable doubt that DePuy Orthopaedics, Inc. intentionally or knowingly offered, conferred, or agreed to confer a benefit on Dr. Heinrich on the agreement or understanding that the benefit would influence Dr. Heinrich's conduct in relation to the affairs of the persons listed below?

> A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.  "Beyond a reasonable doubt" means proof of such a convincing character that you would be willing to rely and act upon it without hesitation in making the most important decisions of your own affairs.

> A company acts with intent with respect to the nature of its conduct or to a result of its conduct when it is the conscious objective or desire to engage in the conduct or cause the result.

> A company acts knowingly with respect to the nature of its conduct or to circumstances surrounding its conduct when it is aware of the nature of its conduct or that the circumstances exist.  A company acts knowingly with respect to a result of its conduct when it is aware that its conduct is reasonably certain to cause the result.

> "Benefit" means anything reasonably regarded as economic gain or advantage.

> To prove commercial bribery against DePuy Orthopaedics, Inc., the Plaintiffs must prove that the bribery was authorized, requested, commanded, performed, or recklessly tolerated by a high managerial agent acting on behalf of DePuy Orthopaedics, Inc. and within the scope of his employment.

> A "high managerial agent" means an officer of a corporation.

Answer "Yes" or "No" with respect to each of the following:

a.    Richard Klusmann    _____

b.    Margaret Aoki    _____

38

Answer Question 19 only if you have answered "yes" to Question 1 or Question 2. Otherwise do not answer Question 19.

Question 19: Limitations

By what date should the persons named below, in the exercise of reasonable diligence, have discovered their injury, if any, from the Pinnacle Ultamet Hip Implant?

Answer with a date with respect to each of the following:

a. Richard Klusmann    11/14/11

b. Donald Greer    2/14/12

## POST ARGUMENT INSTRUCTIONS

You are the sole and exclusive judges of fact. You should determine these facts without any bias, prejudice, sympathy, fear or favor, and this determination should be made from a fair consideration of all the evidence that you have seen and heard in this trial. Do not speculate on matters that are not in evidence. Keep constantly in mind that it would be a violation of your own sworn duty to base a verdict on anything but the evidence in the case. Your answers and verdict must be unanimous; that is, all of you must agree to each of your answers. You will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

The fact that I have given you instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted by you in any way as an indication that I believe a particular party should win or prevail in this case. Also, you should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that plaintiffs should, or should not, win this case.

Remember any notes you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be

unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. You will now retire to the jury room. In a few minutes I will send you this charge and the exhibits the Court has admitted into evidence. Upon receiving the exhibits and charge, you should select a foreperson and commence deliberations. Do not deliberate unless all of you are present in the jury room. In other words, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

If during the course of your deliberations you wish to communicate with the Court, you should do so only in writing by a note signed by the foreperson. I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, with respect to any

message or question you might send that you should never state or specify your numerical division at the time.

During your deliberations you will set your own schedule, deciding for yourselves when and how frequently you wish to recess and for how long.

After you have reached your verdict, you will return this charge together with your written answers to the foregoing questions. Do not reveal your answers to anyone besides other members of the jury until such time as you are discharged, unless otherwise directed by me. After you have reached a verdict, you are not required to talk with anyone about the case.

Your foreperson will sign in the space provided on the following page after you have reached your verdict.

Signed: March 10, 2016.

ED KINKEADE
UNITED STATES DISTRICT JUDGE

## VERDICT OF THE JURY

We, the jury, have answered the above and foregoing questions as indicated, and herewith return the same into Court as our verdict.

DATED: March 17, 2016.

 

_____
FOREPERSON